# EXHIBIT B

Case 2:26-cv-01640-LDH-LGD    Document 1-3    Filed 03/19/26    Page 2 of 13 PageID #: 12

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

---

Jillian Oresky-Weston,

                        Plaintiff,

-against-

Trans Union LLC a/k/a TransUnion; Experian
Information Solutions, Inc.; Equifax Information
Services LLC,

                        Defendants.

---

Index No.: 604139/2026

**COMPLAINT**

Plaintiff Jillian Oresky-Weston ("Plaintiff"), by and through her attorneys, Petroff Amshen LLP, as and for her Complaint against Trans Union LLC a/k/a TransUnion ("TransUnion"), Experian Information Solutions, Inc ("Experian") and Equifax Information Services LLC ("Equifax") (collectively, the "Defendants" or "CRAs"), alleges upon personal knowledge, review of public records, and information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is an action arising from Defendants' multiple, flagrant, and willful violations of the New York Fair Credit Reporting Act ("NYFCRA"), N.Y. Gen. Bus. Law § 380, *et seq*. Defendants, the nation's three largest consumer reporting agencies, engaged in a pattern of conduct that demonstrates a reckless disregard for their statutory obligations, resulting in severe and ongoing harm to the Plaintiff.

2. TransUnion, Experian and Equifax, the consumer reporting agencies, negligently and willfully published this false information, failed to correct it upon receiving a clear and documented dispute, and recklessly made the reporting even more damaging post-dispute.

3

## THE PARTIES, JURISDICTION, AND VENUE

3.      Plaintiff is an adult individual, residing in Nassau County, and is a "consumer" as that term is defined by GBL § 380-a(b).

4.      TransUnion is a limited liability company organized and existing under the laws of the State of Delaware and is a "consumer reporting agency" as defined by GBL § 380-a(e).

5.      Experian is a corporation organized and existing under the laws of the State of Ohio and is a "consumer reporting agency" as defined by GBL § 380-a(e).

6.      Equifax is a limited liability company organized and existing under the laws of the State of Georgia and is a "consumer reporting agency" as defined by GBL § 380-a(e).

7.      This Court has personal jurisdiction over all Defendants pursuant to CPLR §§ 301 and 302.

8.      Each Defendant regularly transacts and conducts substantial business within the State of New York.

9.      The CRAs derive substantial revenue from selling consumer reports on New York residents to New York creditors and other users.

10.     The causes of action herein arose directly from Defendants' transactions and occurrences within New York and their tortious impact on Plaintiff, a New York resident whose financial reputation was damaged within this state.

11.     Venue is proper in Nassau, as Plaintiff resides in Nassau County.

## STATEMENT OF FACTS

12.     Plaintiff's mortgage loan was originated in or about January 2022.

13.     Since that time, the servicing of the loan has been transferred repeatedly, no fewer than six times in approximately three years, including to LoanDepot, Specialized Loan Servicing,

4

Case 2:26-cv-01640-LDH-LGD   Document 1-3   Filed 03/19/26   Page 4 of 13 PageID #: 14

Newrez, Fay Servicing, LLC, and most recently SN Servicing Corporation in or about October 2025 (Loan No. ██████████ ).

14.     Each transfer resulted in new account numbers, new points of contact, and inconsistent account records.

15.     Plaintiff timely established automatic monthly payments in the approximate amount of $1,092.44. From February 2022 through mid-2023, Plaintiff made regular payments.

16.     However, in or about June 2023, despite servicing having transferred from LoanDepot to Specialized Loan Servicing effective June 1, 2023, Plaintiff's automatic payments continued to be drafted and sent to LoanDepot.

17.     These payments were initially accepted, and Plaintiff was not promptly notified that they were being misdirected.

18.     In the months that followed, multiple payments made between June 2023 and December 2023 were either returned long after submission or were not properly credited to the loan. Some payments were reversed months later without adequate explanation.

19.     As a result of these unexplained reversals and servicing errors, Plaintiff began receiving delinquency notices for months in which payments had in fact been made and withdrawn from her bank account.

20.     Beginning in or about March 2023 and continuing thereafter, Plaintiff received conflicting correspondence regarding returned payments, late fees, lender-placed hazard and flood insurance, escrow shortages, and default status.

21.     Statements reflected inconsistent "amounts due," fluctuating monthly payment amounts, and varying reinstatement figures.

5

Case 2:26-cv-01640-LDH-LGD   Document 1-3   Filed 03/19/26   Page 5 of 13 PageID #: 15

22.     At times, letters stated Plaintiff was current; at other times, letters alleged she was several months in default.

23.     On or about April 8, 2024, Plaintiff received notice that her loan had been referred to foreclosure.

24.     Thereafter, foreclosure status and late payments were reported to consumer reporting agencies.

25.     Plaintiff disputes the accuracy of this reporting, as she had made numerous payments that were either misapplied, reversed, or not properly credited due to servicing transfers and internal accounting errors.

26.     After servicing transferred to Newrez in or about May 2024, Plaintiff sought loss mitigation assistance and, with the help of housing counselors, submitted a Qualified Written Request and supporting documentation in August 2024 challenging the servicer's assertion that she had failed a prior workout or trial plan.

27.     Plaintiff has consistently maintained that she never knowingly entered into or defaulted on any prior workout plan.

28.     Nonetheless, her loss mitigation applications were repeatedly denied on the stated basis of a "prior workout plan failure," without adequate documentation supporting that claim.

29.     Throughout 2024, Plaintiff was repeatedly reassigned to new "single points of contact," required to resubmit documentation, and instructed to apply through online portals that were later disabled.

30.     Written responses were delayed or inconsistent, and reinstatement figures continued to increase as months passed during the pendency of these unresolved disputes.

6

Case 2:26-cv-01640-LDH-LGD   Document 1-3   Filed 03/19/26   Page 6 of 13 PageID #: 16

31.     In December 2024, servicing was transferred back to LoanDepot. In March 2025, Plaintiff received correspondence approving a forbearance plan in the amount of $1,092.44 per month.

32.     However, shortly thereafter, on or about April 7, 2025, the loan was transferred again, this time to Fay, further disrupting any continuity in the loss mitigation process.

33.     In or about October 2025, the loan was transferred yet again to SN Servicing Corporation, which demanded approximately $76,000.00 to reinstate the loan and reported a total balance due of approximately $202,000.00.

34.     These amounts included accumulated arrears, fees, and charges that substantially increased during the period in which Plaintiff was attempting to resolve servicing errors and obtain assistance.

35.     As a result of the foreclosure reporting and continuing derogatory credit entries, Plaintiff has been denied financing on multiple occasions.

36.     In July 2025, Plaintiff first attempted to obtain business expansion financing but was unable to proceed due to negative mortgage reporting.

37.     On January 22, 2026, Plaintiff applied for a $50,000.00 business loan with TD Bank and was denied based on "negative information on [her] credit report, past or existing credit obligations," specifically related to the reported foreclosure and late payments.

38.     The repeated servicing transfers, misapplied and reversed payments, inaccurate delinquency designations, foreclosure referral, and continued negative credit reporting have directly and proximately caused Plaintiff financial harm, loss of business opportunity, reputational damage, emotional distress, and the inability to secure mortgage and business financing despite working more than six days per week and actively attempting to resolve the account in good faith.

7

Case 2:26-cv-01640-LDH-LGD   Document 1-3   Filed 03/19/26   Page 7 of 13 PageID #: 17

39.    Plaintiff identifies the following tradelines appearing on her consumer credit report:

- FAYFINANCIAL – Account No. ████████****; Opened: April 7, 2025; Balance: N/A; Remark: 120/180 days late (should reflect Current/Resolved) – Fay Servicing, LLC.

- NR/SMS/CAL – Account No. ████****; Opened: June 1, 2023; Balance: $1,269.00; Remark: Derogatory/Late/Foreclosure (should reflect Paid) – Newrez LLC / Specialized Loan Servicing.

- LOANDEPO.CO – Account No. ██████****; Opened: January 2022; Balance: N/A; Remark: Late Payments (April–May 2023) (should reflect Paid) – LoanDepot. ("the Accounts")

40.    On November 5, 2025, Plaintiff submitted written disputes to CRAs concerning the inaccurate mortgage tradelines arising from repeated servicing transfers, misapplied payments, and wrongful foreclosure reporting.

41.    In her dispute, Plaintiff identified the Accounts and explained that accounts were inaccurately reporting late payments, even an incorrect foreclosure status, and other derogatory information arising during periods of multiple loan servicing transfers, despite her ongoing good-faith efforts to make payments and resolve the account.

42.    Despite receipt of Plaintiff's dispute and supporting documentation, Defendants failed to conduct a reasonable reinvestigation and failed to correct or delete the inaccurate late payment and foreclosure reporting within the statutory period.

43.    An updated credit report dated January 25, 2026, continued to report the disputed mortgage accounts as derogatory, including late payments and foreclosure status, despite Plaintiff's documented payment history and ongoing efforts to resolve the account.

44.    The continued reporting of delinquencies and foreclosure arising during periods of servicing confusion and payment misapplication misrepresents the true status of Plaintiff's mortgage and perpetuates inaccurate information in her credit file.

8

45.     As a direct and proximate result of Defendants' failure to correct the inaccurate mortgage reporting, Plaintiff's credit scores were substantially lowered, impairing her ability to obtain financing.

46.     In July 2025 and again on January 22, 2026, Plaintiff sought business financing, including a $50,000 loan application with TD Bank, and was denied due to negative mortgage-related credit reporting, including foreclosure and late payment entries.

47.     The ongoing inaccurate reporting has prevented Plaintiff from qualifying for new mortgage financing and business expansion funding, causing concrete financial harm and delaying her professional and business growth.

48.     Defendants' failure to reasonably investigate and correct the disputed mortgage tradelines after dispute, constitutes a violation of their statutory duties and has resulted in continuing reputational and financial injury to Plaintiff.

49.     Plaintiff has incurred and will continue to incur financial costs, including costs for obtaining credit reports, certified mailings, and attorneys' fees and litigation costs to investigate and rectify Defendants' errors, to protect herself from potential collection actions on the fraudulent debt, and to prosecute this action.

50.     Plaintiff suffered emotional distress, including anxiety, and a sense of helplessness, stemming from the Defendants' failure to address the wrongful reporting, the damage to her financial reputation, the denial of credit, and the burden of attempting to clear her name.

51.     Plaintiff has spent considerable time and effort attempting to resolve this matter.

**CAUSES OF ACTION**
**COUNT I: Violations of GBL § 380-f**
**Failure to Properly Reinvestigate and Correct Disputed Information**

52.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

9

Case 2:26-cv-01640-LDH-LGD Document 1-3 Filed 03/19/26 Page 9 of 13 PageID #: 19

53. Plaintiff is a "consumer," and the CRAs are "consumer reporting agencies," as defined by GBL § 380-a.

54. GBL § 380-f(a) mandates that if a consumer disputes any item of information contained in her file, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall promptly reinvestigate and record the current status of such information.

55. The presence of contradictory information in a consumer's file shall not, in and of itself, constitute reasonable grounds for believing the dispute is frivolous.

56. Plaintiff conveyed disputes to the CRAs regarding the inaccurate information.

57. These disputes were supported by documentation and specific assertions of fact.

58. Upon receipt of Plaintiff's disputes, the CRAs were statutorily obligated to conduct a prompt and reasonable reinvestigation to determine the accuracy of the disputed information. This duty includes notifying the furnisher of the information of the dispute.

59. Defendants failed to conduct prompt and reasonable reinvestigations of the disputed information.

60. The investigations carried out were inadequate and unreasonable, as evidenced by the continued reporting of inaccurate information about the Accounts on credit reports obtained from the CRAs and the failure to delete information that was demonstrably inaccurate.

61. GBL § 380-f(b) requires that if, after reinvestigation, an item is found to be in error or can no longer be verified, the consumer reporting agency shall promptly expunge the item, otherwise correct the file, and refrain from reporting the item in subsequent consumer reports.

62. Defendants failed to comply with this mandate.

10

Case 2:26-cv-01640-LDH-LGD Document 1-3 Filed 03/19/26 Page 10 of 13 PageID #: 20

63. GBL § 380-f(d) further requires that if any item disputed and reinvestigated is found to be in error or can no longer be verified, upon completion of the reinvestigation of all items disputed, the agency shall promptly mail the consumer a corrected written copy of the file, reflecting any changes.

64. Defendants' failures to comply with GBL § 380-f were negligent and/or willful.

### COUNT II: Violations of GBL § 380-j (*As To The CRAs*)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

65. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

66. GBL § 380-j(b) states that "[w]henever a consumer reporting agency prepares a consumer report; it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

67. The CRAs failed to follow a reasonable procedure to assure the maximum possible accuracy of the information contained in Plaintiff's consumer reports.

68. This failure is evidenced by the persistent and severe inaccuracies related to the Accounts, making it appear as though Plaintiff owes debts that are being paid, and the contradictory and inaccurate reporting of payment history and account statuses for the Accounts across the CRAs even after Plaintiff's formal dispute.

69. These inconsistencies demonstrate a lack of reasonable procedures to ensure consistent and accurate data intake, processing, or reporting.

70. These failures to maintain reasonable procedures to assure maximum possible accuracy existed prior to Plaintiff's dispute and contributed to the initial harm suffered by Plaintiff.

71. The CRAs' failures to comply with GBL § 380-j were negligent and/or willful.

### COUNT III: Negligent Non-Compliance With GBL § 380-m (*As To All Defendants*)

72. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

11

Case 2:26-cv-01640-LDH-LGD Document 1-3 Filed 03/19/26 Page 11 of 13 PageID #: 21

73. GBL § 380-m provides that any consumer reporting agency or user of information who is negligent in failing to comply with any requirement imposed under Article 25 of the GBL is liable to the consumer for actual damages, costs, and reasonable attorneys' fees.

74. Defendants were negligent in failing to comply with their respective requirements under GBL §§ 380-f and 380-j, and other applicable provisions of the NYFCRA.

75. The CRAs negligently failed to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit information.

76. The CRAs negligently failed to conduct prompt and reasonable reinvestigations of the information disputed by Plaintiff.

77. The CRAs negligently failed to correct or delete inaccurate, incomplete, or unverified information from Plaintiff's credit files.

78. The CRAs negligently continued to report inaccurate information about Plaintiff.

79. The sheer volume of errors, the clear nature of the disputed inaccuracies, the failure to correct them after specific disputes supported by documentation, and the inexplicable maintaining of misreported information by the CRAs, all constitute, at a minimum, negligence.

**COUNT IV: Willful Non-Compliance with GBL § 380-l (*As To All Defendants*)**

80. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs.

81. GBL § 380-l provides that any person who knowingly and willfully violates any requirement imposed under Article 25 of the GBL with respect to any consumer is liable to that consumer for actual damages, punitive damages, costs, and reasonable attorneys' fees.

82. Defendants' failures to comply with their statutory obligations under GBL §§ 380-f and 380-j, and other applicable provisions of the NYFCRA, were knowing and willful, or so reckless as to constitute willful non-compliance.

12

Case 2:26-cv-01640-LDH-LGD   Document 1-3   Filed 03/19/26   Page 12 of 13 PageID #: 22

83.  Evidence of Defendants' willful non-compliance includes, but is not limited to:

a)  The continued reporting of clearly identified and document inaccuracies after receiving specific and detailed disputes from Plaintiff.

b)  The inexplicable and egregious persistence of inaccurate and reporting of Plaintiff's Accounts information by the CRAs even after Plaintiff formally disputed the information and asserted its accuracy. This demonstrates a conscious or reckless disregard for Plaintiff's rights and the truth-finding purpose of the reinvestigation process.

c)  The systemic nature of the errors across the CRAs, coupled with the inadequate response to disputes, suggests a pattern of conduct indicative of a willful disregard for their statutory duties rather than isolated, inadvertent mistakes.

d)  The failure of the CRAs to delete information that was either demonstrably false or could not be verified through a reasonable reinvestigation process, opting instead to merely note a "consumer statement" in some instances, which is insufficient to cure the underlying inaccuracy if the information is indeed erroneous or unverifiable.

84.  Defendants knew or should have known of their obligations under the NYFCRA and nonetheless engaged in a course of conduct that violated Plaintiff's rights.

85.  Their actions demonstrate a willful intent to disregard the mandates of the NYFCRA or, at the very least, a reckless disregard for whether they were complying.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendants, jointly and severally where appropriate, as follows:

A.  Awarding Plaintiff actual damages in an amount to be determined at trial, for harm to her creditworthiness, loss of credit opportunities on favorable terms, emotional distress, humiliation, anxiety, and damage to her reputation;

B.  Awarding Plaintiff punitive damages pursuant to GBL § 380-l to punish Defendants for their willful and reckless misconduct and to deter them and others from similar conduct in the future, in an amount to be determined at trial;

C.  Awarding Plaintiff the costs of this action, together with reasonable attorneys' fees, pursuant to GBL §§ 380-l and 380-m; and

D.  Granting equitable and declaratory relief, including but not limited to, an order:

a.  Directing Defendants to delete all adverse, inaccurate, incomplete, and unverified information related to the Accounts from Plaintiff's credit files;

13

b. Permanently enjoining Defendants from re-reporting this or any similar inaccurate information concerning the Accounts in the future;

c. Directing the CRAs to conduct a full, proper, and thorough reinvestigation of all items disputed by Plaintiff in accordance with the NYFCRA; and

d. Directing the CRAs to provide true and accurate corrected copies of Plaintiff's credit reports to Plaintiff and to every person or entity to whom they furnished a report containing the inaccurate information within the last two years.

E. Awarding Plaintiff the costs of this action, together with reasonable attorneys' fees, pursuant to GBL §§ 380-l and 380-m; and

Dated: Brooklyn, New York
February 25, 2026

PETROFF AMSHEN LLP
*Attorneys for Plaintiff,*
Jillian Oresky-Weston

*/s/ Serge F. Petroff*
Serge F. Petroff, Esq.
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: spetroff@petroffamshen.com

14